ÁUREA RAMÍREZ, Appellant, v. THE REGISTRAR OF PROPERTY, MAYAGÜEZ SECTION, JOSÉ M. RAMÍREZ DE ARELLANO, Respondent.

No. G-66-7.     Decided June 27, 1968.

*Enrique Báez García* for appellant. The respondent Registrar appeared by brief.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On November 22, 1948, Germán Vélez Forestier and Áurea Ramírez contracted marriage in Mayagüez. They had two children named Áurea Brunilda and Germán Wilkin. In 1956 the conjugal partnership acquired an urban property located in that city which was recorded in its favor.

After 1958 the Vélez Ramírez family moved to Mexico; they acquired domicile in the capital of said republic. In December 1963 the "conjugal home" was established at No. 95, 8-A Street, on the corner of Pilares de la Colonia, Reparto Vértiz Narvarte, Department 7.

On September 10, 1964 the wife, Áurea Ramírez, appeared before the Fourteenth Civil Court of the Capital and brought an action of divorce on the ground of abandonment for more than eight months prior to the date of the complaint.[1] The defendant husband was summoned. He appeared

---

[1] The Civil Code of Mexico of 1928, which went into effect on October 1, 1932, in its § 267 provides that it is a legal cause of divorce, among others:

"VIII—Abandonment of the conjugal home for more than six months without justified cause."

See, *Leyes y Códigos de México, Código Civil,* 9th ed., Editorial Porrua, S.A., 1963.

in the litigation and answered the complaint saying "that he accepted the terms of the complaint, but explaining that even though he abandoned the conjugal home for more than ten months, he did so because his wife made life impossible for him." On October 4, 1965, judgment was rendered decreeing "the dissolution of the marriage relations between Áurea Ramírez Vélez and Germán Vélez Forestier, who recover their full capacity to remarry, but Mr. Germán Vélez Forestier, who is the guilty spouse cannot remarry until two years from this decree."

On November 23, 1965 it was stated that "the decree is final and res judicata for all legal purposes," and it was ordered "Compliance be had with the fifth pronouncement of the judgment (let it be recorded in the original Registry on the margin of the record of the marriage between plaintiff and defendant in this suit) for which purpose, a letter of request, with the necessary insertions, be sent to the competent judge in Mayagüez, Puerto Rico, by the proper legal channels, so that in aid of this court he shall make the proper entry in the marriage certificate and other pertinent documents pursuant to the laws of the country."

On November 25, 1965, "in compliance with the order in the case" a "certified, properly stamped, sealed, and verified" copy of the judgment and of the "writ declaring it final" was issued.

The text of the final judgment, with proof of authentication of signatures and verification of positions or office is as follows:

"MR. AGUSTIN MARTINEZ RODRIGUEZ, ATTORNEY AT LAW, FIRST SECRETARY OF RESOLUTIONS OF THE FOURTEENTH COURT; CIVIL SECTION OF THIS CAPITAL:

.................................... CERTIFIES ....................................
That in the record of the Ordinary Civil Suit of Divorce brought by ÁUREA RAMÍREZ VÉLEZ against GERMÁN VÉLEZ FORESTIER,

there appear, among others, the following entries: Mexico, Federal District, October four, nineteen hundred sixty-five........ ......AFTER EXAMINING the record of the divorce proceedings filed by ÁUREA RAMÍREZ VÉLEZ against GERMÁN VÉLEZ FORESTIER, for the purpose of determining, and it appearing:..............................

......I.—That on September ten, nineteen sixty-four, Mrs. Áurea Ramírez Vélez appeared requesting the divorce from Germán Vélez Forestier with its legal consequences stating: that she was married to defendant, that she had had two children, Áurea and Germán, from her marriage, that she had established her conjugal home at No. 95, 8-A Street on the corner of Pilares, Department 7, Colonia Vértiz Narvarte, in this city. That her husband had abandoned the said conjugal home more than eight months prior to the date of the complaint; that he had refused to return to the conjugal home. In support of her complaint she invoked Articles 266, 267 clause VIII, 291 and other related articles of the Civil Code, 255, 256 and other related articles of Civil Procedure....................................................................................

......II.—That by order of September twenty-one, nineteen sixty-four the complaint was granted and the defendant having been summoned he answered stating that he accepted the terms of the complaint, but explaining that even though he abandoned the conjugal home for more than ten months, he did so because his wife made life impossible for him.................................................

......III.—By order of January sixteen, nineteen sixty-five, the answer was admitted, the plaintiff having replied by brief on January twenty-five, denying that she was to blame for the separation...............................................................................:

......IV.—By order of February two, nineteen sixty-five the reply was considered filed, without the defendant having answered plaintiff's reply, for which reason his default was entered by order of February twenty-two, nineteen sixty-five.........................

......V.—The plaintiff offered and introduced in evidence defendant's confession and the testimony given by Miss Carmen Apatiga Aguilar and Esperanza Omaña Vidal [*sic*], it being established by such evidence and by the certificates attached to the complaint: a).—The marriage contracted by plaintiff and defendant on November twenty-two, nineteen forty-eight; b).— The birth of Áurea Brunilda Vélez Ramírez on March twenty-seven, nineteen fifty-one; c).—The birth of Germán Wilkin

Vélez Ramírez on March ten, nineteen fifty-three; d).—That the conjugal home was established at No. 95, 8-A Street on the corner of Pilares in Colonia Vértiz Narvarte, Department 7 and, e).—That defendant abandoned the conjugal home without justified cause in December, nineteen sixty-three. With the foregoing the facts on which the action is based are established and as to law they are based on Articles 267 Clause VIII, 283, Section I, 287, 288, 291, 302, 308, and 311 of the Civil Code.........
......For the reasons stated and proved, it should be and it is hereby decided:

......FIRST.—The ordinary civil proceedings are lawful and it is decided:.........................................................................

......SECOND.—The court decrees the dissolution of the marriage relations between Áurea Ramírez Vélez and Germán Vélez Forestier, who recover their full capacity to remarry, but Mr. Germán Vélez Forestier, who is the guilty spouse, cannot remarry until two years from this decree...................................

......THIRD.—It is stated that the children should remain under the patria potestas of Mrs. Áurea Ramírez Vélez, until they become of age.........................................................................

......FOURTH.—Mr. Germán Vélez Forestier is ordered to provide support for Áurea Ramírez Vélez and for her two children.

......FIFTH.—With copy of this order, let it be recorded in the original Registry on the margin of the record of the marriage between plaintiff and defendant in this suit...................................

......SIXTH.—No special award for costs is made...........................

......SEVENTH.—Let it be notified................................................

......It was thus definitively decided and signed by the Fourteenth Civil Judge, Mr. Andrés Iturbide Valdez. I attest........................
Signed with initials...................................................................
Writ declaring it final.—Mexico, Federal District, November twenty-three, nineteen sixty-five.—As it is requested in the writ under consideration it is stated that the decree entered is final and res judicata for all legal purposes. Compliance with the fifth pronouncement of the judgment is hereby ordered, for which purpose, with the necessary insertions, letter of request be sent to the competent judge in Mayagüez, Puerto Rico, by the proper legal channels, so that in aid of this court he shall make the proper record of the marriage certificate and other pertinent documents pursuant to the laws of the country. The certified

copy requested shall be issued and the record shall be filed. Let it be notified. It was so agreed and signed by the judge. I attest. Signed with initials............................................................................

AND IN COMPLIANCE WITH THE ORDER IN THE RECORD THIS CERTIFIED COPY, PROPERLY STAMPED, SEALED, AND COMPARED IS ISSUED IN TWO LEGAL SHEETS IN THE CITY OF MEXICO, FEDERAL DISTRICT, ON NOVEMBER TWENTY–FIVE, NINETEEN SIXTY–FIVE. I ATTEST..........................................................................................

> SECRETARY OF RESOLUTIONS
> (Signed) AGUSTÍN MARTÍNEZ RODRÍGUEZ
> MR. AGUSTÍN MARTÍNEZ RODRÍGUEZ

Co.

AUTHENTICATION No. 02194

BY RESOLUTION OF THE CHIEF OF DEPARTMENT OF THE FEDERAL DISTRICT, MR. BENJAMÍN OLALDE B., General Director of Government, hereby legalizes the signature, subscribed to the foregoing document, of MR. AGUSTÍN MARTÍNEZ RODRÍGUEZ who was, at the time the present document was issued First Secretary of Resolutions of the Fourteenth Court Civil Section of this City.

Mexico, F.D., January 21, 1966.

> (Signed) Illegible Signature.

There is a stamp which reads: 'GENERAL DIRECTORATE OF GOVERNMENT.'

......MR. CARLOS GALVEZ BETANCOURT, Chief Officer of the Secretariat of Government, by action of the Secretary, CERTIFIES: that Mr. Benjamín Olalde Bustos whose true signature is subscribed to the foregoing document, was on the 21st day of the current month, General Director of Government of the Federal District Department..........................................................................................

Mexico, F.D., January 25, 1966.

> (Signed) Illegible Signature.

Recorded under No. 248.
The General Director of Government.
(Signed) Rubén Pérez Peña.
MR. RUBÉN PÉREZ PEÑA.
/gr.

There is a stamp which reads: 'SECRETARIAT OF GOVERNMENT CHIEF OFFICE' and another stamp which reads: 'SECRETARIAT OF GOVERNMENT, GENERAL DIRECTORATE OF GOVERNMENT.'

No. 1685                                          F. 8 (Consular)

THE SECRETARIAT OF FOREIGN RELATIONS HEREBY CERTIFIES: that MR. CARLOS GALVEZ BETANCOURT, whose true signature is subscribed to the foregoing document, was, on the twenty-fifth day of January nineteen sixty-six, Chief Officer of Government.

· · Mexico, F.D., February 1, 1966.

> B.O. OF THE SECRETARY
> ASSISTANT TO THE DIRECTOR OF
> CONSULAR SERVICE
> (Signed) Luis Alva Cejudo.

This Secretariat assumes no responsibility for the contents of the foregoing document.

There is a stamp which reads: 'SECRETARIAT OF FOREIGN RELATIONS. FEB. 1, 1966, OFFICE OF THE DIRECTORATE OF CONSULAR SERVICE.'

United Mexican States )
Federal District        )
City of Mexico          )   SS:
Embassy of the United)
States of America       )

I, Edith A. Stensby, Consul of the United States of America at Mexico, D.F., Mexico duly commissioned and qualified do hereby certify that LUIS ALVA CEJUDO whose true signature and official seal are, respectively, subscribed and affixed to the foregoing document, was on the 1st day of February 1966, the date thereof, Assistant to the Director of Consular Service of the Secretariat of Foreign Relations of Mexico duly commissioned and qualified to whose official acts, faith and credit are due.

The Consular Section of the Embassy assumes no responsibility for the contents of the foregoing document.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of the Consular Service of the United States of America at Mexico, D.F., Mexico, this 3rd day of February 1966.

(Signed) Edith A. Stensby
Consul of the United States of America.

Tariff Item No. A830311
Receipt No. 48
Paid in Pesos: $31.25
There is a stamp in relief which reads: 'Consular Service of the United States of America, Mexico, D.F.' "

On May 3, 1966, Áurea Ramírez filed before this Supreme Court, under No. Misc. 66-1, a motion entitled "Petition," as "plaintiff-petitioner," against her former husband Germán Vélez Forestier, as defendant, for "Approval of Foreign Judgment," attaching thereto a certified copy of the judgment of the Mexican court aforementioned and praying this Court, with a view to said judgment, Art. 52 of the Mortgage Regulations, and §§ 951–958 of the Law of Civil Procedure of 1881, to determine its validity and provide for "the effectiveness of the judgment upon which this petition is based, issuing the corresponding order of attachment to the Registrar of the Property of Mayagüez for all pertinent legal purposes," that is, for the purpose of recording said urban property in that Registry "in the name of their present owners, who have become co-owners, as a consequence of the divorce decree."

We refused to take cognizance of the matter in first instance. Then Mrs. Ramírez presented the final judgment to the Registrar of Mayagüez so that the real property be recorded in common in the name of the former spouses.

The Registrar returned the document and suspended its registration by means of the following note:

"The document is returned and its registration suspended because it is not established that the judgment of divorce rendered by the Fourteenth Civil Court of the City of Mexico, Federal District, Republic of Mexico, decreeing the dissolution of the marriage relations between Áurea Ramírez and Germán Vélez and which is connected with community property located in Puerto Rico is valid and operative, that it is not contrary to the local public policy, and that its execution has been ordered by a competent court pursuant to Arts. 2(4) and 5 of the Mortgage Law and 52 of its Regulations, and the decision in *Ponce* v. *Badrena*, 74 P.R.R. 210, a note of suspension for 60 days being entered on the margin of the entry of presentation No. 387, folio 194, of the Book 266, as provided by Act No. 73 of June 23, 1958. Mayagüez, October 28, 1966."

As we have seen, registration of the final Mexican judgment[2] was denied unless it were established: (a) that the divorce decree it contains is lawful and operative, (b) that it is not contrary to local public policy, and (c) that its execution has been ordered by a competent court pursuant to Arts. 2(4) and 5 of the Mortgage Law, 52 of its Regulations, and the decision in *Ponce* v. *F. Badrena e Hijos, Inc.*, 74 P.R.R. 210 (1952).

The distinguished attorney for appellant considers that the Registrar's decision is correct; he admits that he is bound to comply with the provisions of Art. 52 of the Regulations requiring that its execution be previously ordered.

However, he understands that both the aforementioned paragraph of Art. 52 of the Regulations, and Arts. 951 to 958 of the old Spanish Law of Civil Procedure which was in effect here since January 1, 1886, concerning "Judgments

---

[2] The word *ejecutoria* and the phrase *sentencia ejecutoria* (final judgment) mean the same thing, that is, the judgment which, because of its having been consented in first instance or affirmed in last instance, has acquired the finality and authority of res judicata. In strict sense *ejecutoria* or *carta ejecutoria* (writ of execution) is the public instrument formally drafted by the competent judicial officer, in which a final judgment is literally inserted, transcribed or set forth. Article 368 of the old Law of Civil Procedure defines it thus.

rendered by foreign courts" are inconsistent with the conditions existing in Puerto Rico in 1898, and in 1966, as a result of the creation of the Commonwealth of Puerto Rico, and that neither the Registrars of Property nor the Superior Court are the ones empowered to lay down general policies and to determine uniformly which provisions of our juridical structure are in force and which are not and that such power resides in this Supreme Court. Therefore he requests this Court to decree that the Mexican judgment of divorce is lawful and to order that the corresponding entry be made in the Registry of Property in connection with said urban property.

On his part the respondent Registrar maintains:

"Although foreign judgments should be recognized, their registration should not lie solely by virtue of the judicial order of the judge who entered it. It is necessary to present it to the courts of the country in order to determine whether or not its execution should be complied with.

"It is not incumbent upon the Registrar within the power to pass upon documents of Art. 18 of the Mortgage Law, to judge whether the requirements set forth by the case law to give validity to foreign judgments have been complied with, to determine whether or not they are against local public policy or whether reciprocal treaties or principles exist.

"Precisely that is the purpose of Art. 52 of the Regulations of the Mortgage Law in providing that judgments rendered by foreign courts cannot be recorded until the Supreme Court shall direct their execution in accordance with the provisions of the Law of Civil Procedure. Although the doctrine set forth in articles 5 of the Law and 52 of the Regulations subsists in essence, it should be understood in accordance with the prevailing situation, that the reference to Spain is to Puerto Rico and the reference to the Law of Civil Procedure is to the Code of Civil Procedure and the Law of Evidence which govern today, and the reference to the Supreme Court is to the competent court pursuant to the Judiciary Act."

The parties are in agreement with respect to the point that in order to record in the Registry the judgments ren-

dered by foreign courts it is necessary that the local courts have directed their execution. They do not agree as to which is the judicial forum which shall take cognizance of the matter, appellant maintaining that it is this Supreme Court, and the Registrar, that it is the Superior Court.

—A—

We concur with the view of the parties on the need that the execution of the foreign judgment be previously decreed in order to record it.

In its Art. 2(4) our Mortgage Law provides that the following shall be recorded in the Registry:

"Final judgment declaring legal incapacity to administrate, or the presumption of death of absentees, imposing a penalty of interdiction or any other penalty affecting the civil capacity of persons as to the free disposition of their property."

But not only those rendered by our courts shall be recorded, but also those rendered in foreign countries if the conditions necessary to be effective in Puerto Rican territory are present therein. It is thus authorized by Art. 5 of the Law itself, according to which:

"The documents or instruments mentioned in article 2 executed in a foreign country which are valid *in Spain* under the laws, and final judgments of the character mentioned in subdivision four of said article rendered by foreign courts which must be enforced *in the Kingdom* in accordance *with the provisions of the law of civil procedure,* shall also be recorded in the registry." (Italics ours.)

This provision is developed in Art. 52 of the Mortgage Regulations in the following manner:

"Documents executed in foreign countries can be recorded only after having been officially translated by the office of interpretation of languages or by any other official who may be duly authorized to do so.

"Judgments rendered by foreign courts cannot be recorded until the *Supreme Court* shall direct their execution, in accordance with the provisions of the *Law of Civil Procedure.*"[3]

The survival of the mortgage legislation of 1893 is due, as it is known, to Military Order No. 1 of October 18, 1898, ratified by § 8 of the Foraker Act of 1900 and by § 57 of the Jones Act of 1917. Notwithstanding their repeated archaisms and provisions already obsolete or outmoded, those three articles, like others of the 875 which were originally included therein, have not been, nor are, of impossible application in every case.

Muñoz Morales comments in his II *Lecciones de Derecho Hipotecario* 91 (1945) : "Although the doctrine set forth in article 5 of the Mortgage Law subsists in essence, it should be interpreted nowadays in accordance with the new situation, that the reference to Spain is to Puerto Rico and the reference to the Law of Civil Procedure is to the Code of Civil Procedure and to the Law of Evidence which govern today."

The professor favored that the requirement of previous recognition and declaration of the validity and effectiveness

---

[3] The legislative precedents of these articles of the Law and its Regulations are Arts. 2 and 5 of the Mortgage Law and 37 of the Regulations, which became effective in Puerto Rico on January 1, 1880. These were taken from Arts. 2 and 5 of the Spanish Mortgage Law of 1861 and Art. 9 of its Regulations.

Articles 2(4) and 5 of the Mortgage Law of Spain of December 16, 1909 and Art. 49 of its Regulations of August 6, 1915, are concomitant with Arts. 2(4) and 5 of our Law and 52 (second paragraph) of its Regulations.

In the Spanish Mortgage Law of 1944 in force, Art. 4 corresponds to our Art. 5 and Art. 38 of its Regulations corresponds to Art. 52, second paragraph, of ours.

Article 2 of the original Mortgage Law has not varied its numeration in the subsequent mortgage laws.

In all this real-estate legislation a difference of condition has been maintained between the notarial document or deed which certifies or legally authenticates the acts or contracts performed or executed by private persons and the judicial document called judgment, writ, *providencias* (orders of mere practice), or orders.

of foreign final judgments (*ejecutorias*) be continued for the purposes of recording them in the Registry. In Arts. 228, 229, 230, and 232 of the Draft for a Mortgage Code of Puerto Rico which he prepared in 1948, the principles of Arts. 2 (4) and 5 of the Mortgage Law and 52 of its Regulations were kept. In the last one he stated:

"Article 232. The judgments or orders rendered by foreign courts shall be recordable with respect to real property or rights located in Puerto Rico, when their execution has been directed by a competent court or authority in Puerto Rico, according to international laws and agreements."

The old Law of Civil Procedure, 1886, in its Arts. 950 to 957, prescribed rules for the recognition and execution of judgments rendered by foreign courts. The cases in which such judgments would have force "in the territory of the islands of Cuba and Porto Rico" were fixed in those articles and the special proceeding called "exequatur trial" was regulated so that the court would declare whether or not the foreign final judgment was to be executed.

■ Our Code of Civil Procedure of 1904 did not reproduce those articles of the former procedural law, nor prescribe rules for the recognition of foreign judgments. The same happened with the Rules of Civil Procedure of 1943 and with the Rules of Civil Procedure of 1958. It is accepted that, once the recognition is decreed, the phase of its execution is governed by the same existing domestic provisions concerning execution of our judgments.

The Law of Evidence, in that part devoted to determining the force and effect of public documents as judicial evidence, provides in its § 66, that the effect of the judgment of any other tribunal of a foreign country having jurisdiction to pronounce it, in case of a judgment against a specific thing, it is conclusive upon the title to the thing, and in all other cases it is "presumptive evidence of a right as between the parties and their successors in interest," the

judgment being rejectable as evidence for want of jurisdiction, want of notice to the party, collusion, fraud, or clear mistake of law or fact.

One thing is the effect, weight, or probative force of a foreign final judgment for the purposes of its admission or rejection as evidence by our courts and another to direct its execution for the special purpose of recording it or entering a note in the Registry of Property pursuant to our Mortgage Law and its Regulations.

Pedro Gómez de la Serna, in his classic work, I *La Ley Hipotecaria, Comentada y Concordada* 381–383, *Imprenta de la Revista de Legislación*, Madrid, 1862, refers to the difference of condition between the notarial document and the final judgment (*ejecutoria*); he indicates the fundamental reasons which justify the requirement of the previous judicial recognition of foreign judgments which may affect real property or property rights located in Spain. Roca Sastre comments that for the purposes of its registration, the foreign judgment, besides the general qualifications required for any title documents, should comply with special requirements, inasmuch as "the circumstances of its origin justify these particularities." II *Derecho Hipotecario* 165, 5th ed., Barcelona, 1954. Sanz Fernández, in his work II *Instituciones de Derecho Hipotecario* 326, Ed. Reus, 1953, tells us that the need of *exequatur* is general and he refers to all kinds of judicial orders, except when they have devolved upon an act of voluntary jurisdiction where no opposition has intervened.

Morell in his I *Comentarios a la Legislación Hipotecaria* 623–624, Reus, Madrid, 1916, speaking about foreign judgments, says:

"The second part of Art. 5 of the law, and Art. 49 of the regulations refer to them. The judgments rendered by foreign courts are recordable, whether in relation to real estate located in Spain, or insofar as they affect the capacity of persons, when

their execution has been directed by a competent court or authority, according to international laws and agreements, proceeding pursuant to the provisions of the Law of Civil Procedure.

" 'In view of the cosmopolitanism which should characterize justice, Torres Campos says, if the international community is to be maintained, it is indispensable that the judgments rendered in a country do not extend merely to the frontiers of the state, but to foreign territory. It is not fair, in principle, that the rights recognized to a citizen by a judicial judgment rendered by the courts of a civilized nation be denied to him in another. Every State, for the prestige of its authority and for the benefits of its subjects, should contribute to the common work of the realization of the Law.'

" 'It is a fundamental rule of public law of all nations, he adds in another place, and as a natural limitation to the foregoing, that a judgment rendered in a country, cannot be, as a matter of law, final in another country, by virtue of exclusively an order of the judge who rendered it. Everywhere it is necessary, for a foreign judgment to be executed, to present it to the courts of the country which, by adopting it, give it in a way, the baptism of the nationality, from which it takes executory character.'

"The differences, irreconcilable at times, between one or the other legislation, explain, on the other hand the need for that requirement."

In *Ponce* v. *F. Badrena e Hijos, Inc.*, *supra*, a decision cited by the Registrar in his note, we were concerned with a suit for the recovery of a final judgment rendered by a court of Buenos Aires, Argentine Republic. We affirmed the judgment of the former District Court of Puerto Rico, San Juan Part, which sustained the complaint and ordered the defendant to pay the amount claimed, $16,411.80, American money, legal interest, costs, and attorney's fees. The validity and effectiveness of the Argentine judgment was attacked on multifarious grounds, among them the lack of jurisdiction of the Argentine court, all of which were considered at length in our interesting opinion. We said therein at page 225:

"Due to that fact, a judgment rendered by an Argentine court should be considered as final by our courts, subject to the provisions of § 428 of our Code of Civil Procedure, which we shall hereinafter discuss. The Supreme Court of the United States and other courts in the States have decided that a foreign judgment is conclusive and entitled to recognition in the United States if the country in which the judgment was rendered recognizes the judgment rendered in the United States, so long as the foreign court has acted with jurisdiction and the basic requirements of due process of law have been complied with, the judgment is not against the local public policy, the judgment is not contrary to the basic principles of justice, and has been rendered by an impartial court. [Citations] From the record it does not appear that the judgment has any of the aforementioned defects; it therefore should be recognized by our courts. Furthermore, the Argentine Republic as a civilized country has an adequate and proper system of laws."

■ Our statute of public policy, in the third paragraph of § 11 of the Civil Code, precludes us from giving effectiveness and validity to any foreign judgment which violates our prohibitory laws relating to persons, their acts or property, and those which relate to public order and to good morals. We have already seen that a foreign judgment may be rejected by evidence of lack of jurisdiction, want of notice to the party, collusion, fraud or clear mistake of law or fact.

■ We admit, however, that the scope of the power to pass upon documents vested by our Mortgage Law on the Registrar does not include power to take judicial notice of foreign laws, or to judge whether the requirements set forth by the case law to give validity to foreign judgments have been complied with, or to determine whether or not they are against local public policy, or whether reciprocal treaties or principles exist. We have already decided that the disputable presumptions of the Law of Evidence do not supply the certainty that the recording of instruments requires. *Esteves* v. *Registrar*, 43 P.R.R. 6 (1932).

■ In order to meet such a situation Art. 52 of the Regulations prescribes that the courts shall direct the execution as a previous step to the corresponding entry or note in the Registry where in some way they would affect real property or rights located in Puerto Rico.

■ Our adjective law being devoid of a special procedure for the recognition of the validity and effectiveness of foreign judgments, the parties seeking such recognition should resort to the ordinary proceeding prescribed by our Rules of Civil Procedure of 1958.

As Jaime Guasp says in his *Derecho Procesal Civil* 1263–1272, 2d ed. 1961, the recognition of foreign decisions is one of expediency which tends to recognize the title which constitutes an essential requirement of a principal proceeding; it is directed to claim such recognition, not to the execution of the foreign judgment; it is a declaratory action by which parties' claims are satisfied by judgment; the court which takes cognizance of the matter acts "as an appellate court"; there are "opposing parties," the plaintiff being the one who seeks the recognition of the foreign judgment, and defendant, the person to whom the recognition is directed.

The foreign decision is taken to the courts for the purpose of giving it the effectiveness which would correspond if a recordable Puerto Rican decision were involved.

■ As in the *exequatur trial* governed by the former Law of Civil Procedure, to which we have previously referred, the proceeding should commence with a complaint drafted in the usual manner, where a brief reference is made to the foreign judgment, it should set forth that the same was rendered by a competent court, with jurisdiction on the persons or parties to the action, that it is unappealable, having been rendered as a result of a personal action, that the obligation for the compliance with which action has been taken is lawful in Puerto Rico, that the judgment is final in conformance with the law of the nation where it was rendered and complies

with the necessary requirements to be considered authentic.

The documents supporting those allegations and particularly the one where the foreign judgment appears, should be attached duly translated into Spanish if they are not drafted in this language.

When a matter of public policy or interest is involved or which may affect the interests of disabled persons, it is advisable, according to the specific circumstances present in each case, to make the prosecuting attorney a party, or direct him to be a party, so that he may defend the interests of public policy or disabled persons who may be adversely affected by the proceeding.

The parties having appeared and the issue thus joined, or default having been entered for failure to appear, the trial should be held, in any event, in the ordinary manner.

The court resorted to cannot entertain the case on the merits or essence of the business or matter object of the foreign judgment; it shall be limited after deciding the admissible challenges which might be preferred, to whether the judgment was rendered with jurisdiction, whether it complies with the fundamental requirements of the due process of law, whether it contains any provision against public policy, the sovereignty or interests of the Commonwealth of Puerto Rico, against the elementary principles of an essential justice, or against good morals and as Manresa explains, at p. 596 of Vol. 4 of his work *Ley de Enjuiciamiento Civil*, Reus 7th ed., Madrid (1955) : ". . . only when there is no difficulty on any of those points, it shall order the execution or compliance with the foreign judgment." In case the recognition and execution are denied, the delivery of the judgment (*ejecutoria*) to the corresponding party shall be ordered.[4]

---

[4] The rules of procedure herein set forth in the light of legislative precedents and of the comments of acknowledged Spanish authorities on adjective law should not be taken as exclusive of any others which may also expedite properly and promptly the recognition and disposition of execution of foreign judgments for the purposes of registration.

—B—

■ With respect to the court to which our legislation attributes jurisdiction to take cognizance in the proceeding, we decide that it is the Superior Court the one which should take cognizance of the matter. It is a court of general jurisdiction, an appellate court, and ordinarily it would be the court where the trial in which the foreign judgment was rendered, would have been held in Puerto Rico.

We should not elaborate any more on this particular. What we indicated, with respect thereto in our order of June 30, 1966 in the following terms, suffices:

"After carefully examining: (1) the aforementioned provisions of our Mortgage Law and its Regulations; the General Order No. 1 of October 18, 1898, concerning the nonexistence of laws which would result entirely or partly inconsistent 'with the change of conditions which occurred in Puerto Rico'; arts. 950 to 957 of the former Law of Civil Procedure, 1886; the Act of March 12, 1903, § I, 4 L.P.R.A., Vol. 1A, 1965 ed., §§ 417, 419, 420, and 428 of the Code of Civil Procedure, 1933 ed., in force; § 3 of Art. V of our Constitution; §§ 1, 5, and 7 of the Judiciary Act of 1952; our decisions in *P.R. Housing Authority* v. *Sagastivelza,* 71 P.R.R. 406 (1950) and *Chamberlain* v. *Delgado, Warden,* 82 P.R.R. 6 (1960) ;[2] and Rule 1 of the Rules of Civil Procedure (1958) ; and after considering that it is a question of an adversary proceeding in first instance, between plaintiff and defendant, where matters of fact and of law shall be raised, argued, and decided, in conformance with the evidence introduced for the first time by the parties,

"We decide: That even though the juridical principles on which Arts. 2(4) and 5 of our Mortgage Law and 52 of its Regulations rely should be maintained in essence, such provisions and those of the old Law of Civil Procedure, 1886, to which they refer, have ceased to govern and absolutely lack legal effectiveness to vest us with such judicial competence as is indispensable to take cognizance in the first instance of the

---

"2 We decided therein that the essential function of the Supreme Court in the administration of justice in Puerto Rico is, generally, to serve as instrument of review or of appeal and not as a court of first instance."

type or kind of the adversary matter to which the initial petition or request presented by the 'plaintiff-petitioner' refers and that we may only take cognizance by way of the administrative appeal provided by the Act of March 1, 1902 against the note of the corresponding Registrar denying registration to said foreign judgment, or by way of review or appeal against the final judgment of any Part of the Superior Court which grants or denies the remedy requested and over which, in first instance, we have no jurisdiction."

Appellant should have resorted first to the Superior Court requesting the court to direct the execution of the Mexican judgment. If she obtained it, then it was proper to present the final judgment to the Registry of Property for the corresponding entry in the record. From the adverse decision of the Registrar she could file an administrative appeal and thus reach this Court. If the Superior Court denied the execution she could file a petition for review in this Court.

The indispensable step of resorting to the Superior Court could not be evaded because of the difficulties such a thing represented for the Registrar. In justice to appellant, we must state, that in our order rendered in case Misc. 66-1, which we have partly copied, we expressed ourselves in such a way that it could be understood that appellant could choose between resorting to the Registry of Property or to the Superior Court, so as to reach this Court with the proper appeal. That, of course, was not our idea, since if the principle underlying Arts. 2(4) and 5 of the Law and 52 of the Regulations is to subsist, the previous judicial recognition should be obtained, but at the level of our appellate courts of general jurisdiction.

The note appealed from will be affirmed.

Mr. Justice Rigau did not participate herein.